CÁNDIDO R. LÓPEZ DE VICTORIA, demandante y recurrido, *v.* ANA MERCEDES RODRÍGUEZ, demandada y recurrente.

*Número:* R-80-299 *Resuelto:* 29 de junio de 1982

*Federico Tilén,* de *Fiddler, González & Rodríguez,* abogado de la recurrente; *Jaime R. Morales Morales,* abogado del recurrido.

## SENTENCIA

Sala integrada por el Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Díaz Cruz, Irizarry Yunqué y Rebollo López.

La demandada recurrente y su abogado recurrido concurrieron en contrato de servicios profesionales en forma de carta suscrita por ambos, cuyo texto dice:

10 de abril de 1975

Sra. Ana M. Rodríguez de Vela
Condominio Villas del Mar
Isla Verde, Puerto Rico
Estimada señora Vela:

Como le prometiera en nuestra conversación, tengo el gusto de detallarle los pormenores de las condiciones en que yo habré de brindarle mis servicios profesionales de abogado y contador, en el caso de divorcio y liquidación de gananciales con su esposo, el señor Ramón Vela.

Mis honorarios en el caso de divorcio serán $1,500.00, de los cuales deberá pagar $500.00 con la aceptación de esta carta-contrato, para yo empezar el trabajo; y los otros $1,000.00 restantes en dos pagos de $500.00 a efectuarse 30 días y 60 días de la fecha de aceptación.

En cuanto al caso de bienes gananciales, mis honorarios serán el 15% del valor de los bienes que a usted le toquen en la división de los bienes de su esposo, y cuya cantidad pagará usted bajo un plan razonable en cuanto a las cantidades a pagarse y también en un tiempo razonable de acuerdo a las circunstancias.

Me parece que lo más lógico sería esperar al desenvolvimiento de los acontecimientos según el caso de liquidación de bienes progrese para que acordemos la forma para el pago.

Puede estar usted segura que no le impondré ninguna condición irrazonable que le pueda ocasionar graves trastornos.

Si es de aceptación suya lo anterior, le agradeceré me firme la copia adjunta la que me devolverá con la remesa de los primeros $500.00.

Atentamente,

Aceptada 4/12/75

(Fdo.) C. R. López de Victoria

(Fda.) Ana M. Rodríguez
 de Vela.

Realizada su labor que finalizó con la escritura Núm. 24

otorgada en San Juan el 9 julio, 1976 ante el notario Sr. Ángel Cruz Cruz, suscrita por los excónyuges Ramón Vela y Ana Mercedes Rodríguez (recurrente), la cliente pagó $6,000 dejando un balance pendiente de $22,950 que el abogado reclamó en demanda instada en 1979. El 13 mayo, 1980 la Sala de San Juan dictó sentencia sumaria por la que condenó a la cliente demandada a pagar a su abogado dichos $22,950, interés legal desde la radicación de la demanda, costas y $3,000 de honorarios de abogado del demandante.

 El contrato de servicios profesionales de abogado está saturado de un elemento ético[1] que le diferencia substancialmente del convenio común sobre arrendamiento de servicios. Su exigibilidad no depende exclusivamente del aparente concurso de voluntades en el contrato escrito, sino que es factor determinante de su eficacia que sus términos, y especialmente el costo de los servicios, se mantengan dentro de unos límites que no rebasen la línea imaginaria que separa los honorarios altos perfectamente lícitos, y los que operan como abuso y opresión de una clase privilegiada contra el consumidor de servicios. Si bien la norma ética expuesta en los cánones 24 y 25 tiene como base la razonabilidad en la compensación, su texto deja bien claro que no se mide dicho concepto exclusivamente por la cuantía; que el abogado no debe estimar sus consejos y servicios en más ni en menos de lo que realmente valen, y que una de las bases para fijación de honorarios la constituye el tipo usual o acostumbrado en la demarcación judicial o comunidad donde se ejerce. Canon 24, (3).[2] Los honorarios contingentes no riñen con la ética cuando sean beneficiosos para el cliente; o cuando el cliente lo prefiera así una vez informado de las

[1] La fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro. Canon 24, párr. 1°.

[2] En San Juan se ha generalizado el uso y práctica de facturar servicios profesionales por horas de labor intelectual y física.

consecuencias. Canon 24, párr. 5°.(³) El recurso a la contingencia o resultas del pleito es particularmente de provecho para el cliente que teniendo una reclamación justa y meritoria carece de los medios que de otro modo le permitirían pagar en forma anticipada o al corriente los honorarios relativamente altos que corresponden a un servicio profesional de excelencia. Es esta conclusión inevitable del texto relacionado del párrafo 3°, Canon 24: "Al aceptar la representación profesional de un cliente [el abogado] debe considerar que le debe a éste un máximo de esfuerzo profesional en la medida de su talento y preparación. No debe aceptar retribuciones mínimas con la idea preconcebida de rendir esfuerzos mínimos." Aun cuando así no lo declare expresamente el Canon 24, en prevención de que es deseable que se llegue a un acuerdo sobre los honorarios al inicio de la relación profesional (*Colón* v. *All Amer. Life & Cas. Co.*, 110 D.P.R. 772, 773–774 (1981)(⁴)) impone al abogado la obligación, llegado el momento de liquidar honorarios contingentes, de suministrar a su cliente un estado sobre el

---

(³) Es de notar que la cautelosa aprobación que dimos a un pacto de honorarios contingentes —se acordó pagar el 10% de lo que se obtuviera en pleito de daños y perjuicios— por haber casos en que esa es la única forma de defender la justicia (*Franqui* v. *Fuertes Hnos., S. en C.*, 44 D.P.R. 712, 725 (1933)) tiene ahora un explícito endoso en el más reciente cuerpo de Reglas Uniformes de Conducta Profesional, proyecto A.B.A.:

"*Rule 1.5 Fees*

(a) . . . . . . .

(b) . . . . . . .

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, expenses to be deducted from the recovery, and whether expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination." 67 A.B.A.J. 1299, págs. 8–9 del suplemento desprendible (1981).

(⁴) El criterio de esta decisión en su exigencia de contrato escrito "en aquellos casos en que no sea anticipable de un todo al inicio de la gestión profesional la

resultado del pleito y si ha habido recuperación, debe mostrar la remisión de su parte al cliente y el método seguido para su determinación.

 Puede decirse que el pacto de honorarios contingentes no limitados por ley especial tiene en la actualidad aceptación ética si satisface el rigor de su regulación por los cánones de conducta profesional y el valor moral de *buena fe* del Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375, que declara:

> Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley.

Como en cualquier otro contrato, la excesiva onerosidad que alcance dimensiones de mala fe, que niegue aquellas normas de conducta colectiva que han de ser observadas por toda conciencia honrada y leal, connaturales a la contratación, justificaría la intervención moderadora del tribunal. S. de 5 junio, 1945; Bonet Ramón, *Código Civil Comentado*, 2da ed., 1964, págs. 957–960; *cf. Jack's Beach Resort, Inc.* v. *Cía. Turismo*, 112 D.P.R. 344 (1982).

 Se comprende que la acción civil en que se ponen a prueba elementos éticos de conducta profesional y de buena fe en la contratación, donde la cuestión suscitada puede plantear un dilema entre el recurso al derecho positivo o al remedio en equidad, resista una adjudicación en el severo

---

extensión y valor de [ésta]", ha sido validado en el texto final de Reglas Uniformes de Conducta Profesional sometido a la American Bar Association:

"*Rule 1.5 Fees*

(a) A lawyer's fee shall be reasonable.

(b) The basis or rate of a lawyer's fee shall be communicated to the client in writing before the lawyer renders substantial services in a matter, except when:

(1) an agreement as to the fee is implied by the fact that the lawyer's services are of the same general kind as previously rendered to and paid for by the client; or

(2) the services are rendered in an emergency or where a writing is otherwise impractical." Íbid.

ámbito de la moción de sentencia sumaria que debe absorber y eliminar cuanto segmento de contención haya en el pleito. Mas no es este el caso que requiera la intervención moderadora del tribunal con la autonomía contractual de las partes que se da únicamente en circunstancias extraordinarias, facultad dimanante del citado Art. 1210 Cc que ha de ejercerse con extrema cautela y patente justificación por su efecto lesivo a la estabilidad de los contratos y a la seguridad jurídica.

Las razones que ofrece la recurrente para negarse a cumplir lo pactado no son justiciables. Descansó en sus alegaciones sin ofrecer bajo juramento prueba de hechos que afectaren la eficacia del contrato o la presencia de factores señalados en esta sentencia que enerven su razonabilidad. Su declaración en oposición de la sentencia sumaria dice:

*Declaración Jurada*

Al Honorable Tribunal:

La suscribiente bajo juramento declara:

1. El demandante siempre me prometió que a pesar de la carta que él preparó para que yo firmara, los honorarios que yo pagaría serían los razonables de acuerdo al trabajo que él efectuara como contable y como abogado.

2. Dicho trabajo ha sido ampliamente compensado por los $6,000.00 que se le pagó en adición a los $1,500.00 por el divorcio.

3. El demandante nunca le ha pasado cuenta a la demandada, nunca le hizo liquidación de sus honorarios y nunca le hizo gestiones de cobro con cantidad específica alguna. La primera gestión que conoce la demandada a esos efectos fue la demanda en este caso.

4. El demandante no le rindió a la demandada servicio alguno como contable.

San Juan, Puerto Rico, a 17 de abril de 1980.

(Fdo.) Ana Mercedes Rodríguez

La carta-contrato revela con sencilla claridad los términos convenidos para la prestación de servicios; no

alega ella que el 15% del producto del pleito adjudicado al abogado represente una imposición onerosa o abusiva, ni siquiera le llama excesiva. Su contestación a la demanda descansa esencialmente en que nada adeuda al abogado demandante porque él "le prometió . . . darle un saldo mediante el pago total de $12,000.00" afirmación que luego reduce a $7,500 en su aislada declaración jurada opuesta a la moción de sentencia sumaria. También adujo que el demandante no le sirvió una liquidación de sus honorarios, una vez terminada su gestión, pero no señala error en la cuantía resultante de la aplicación del 15% al valor de los bienes adjudicádoles en la escritura de liquidación de gananciales, cuyos datos permiten una fácil comprobación de la parte que corresponde a la demandada y la que debe destinarse al pago de servicios profesionales. No vemos área o extremo de legítima contención que amerite un juicio. La frágil alegación, desprovista de toda prueba, sobre novación de contrato o transacción de crédito no puede obviar el Art. 1210, base estructural de la seguridad jurídica y la integridad de las prestaciones: por el mero consentimiento se perfecciona el contrato y las partes quedan obligadas no sólo al cumplimiento de lo expresamente pactado —*pacta sunt servanda*— sino también a todas las consecuencias derivadas, que según su naturaleza sean conformes a la buena fe, al uso y a la ley.

La sentencia sumaria recurrida es correcta en su determinación esencial que sostiene la validez del contrato de servicios profesionales. Debe, sin embargo, modificarse en la imposición de honorarios e intereses a la recurrente porque no consideramos temeridad punible su acción poniendo a prueba un convenio de honorarios contingentes, asunto de constante preocupación por sus derivaciones éticas que había tenido poco acceso a nuestra jurisprudencia.

Se modifica la sentencia al efecto de eliminar la condena de $3,000 de honorarios por temeridad, debiéndose com-

putar intereses desde la fecha de la sentencia y así modificada, se confirma. PUBLÍQUESE.

Así lo pronunció y manda el Tribunal y certifica la Secretaria General. El Juez Presidente Señor Trías Monge disiente sin opinión.

<div align="right">

(*Fdo.*) Lady Alfonso de Cumpiano

*Secretaria General*