RAMÓN TEODORO COLÓN, demandante y recurrido, *v.* ALL AMERICAN LIFE & CASUALTY CO., demandada, ÁNGEL L. TAPIA FLORES, peticionario.

*Número:* O-79-441    *Resuelto:* 25 de marzo de 1981

*Ángel L. Tapia Flores,* por su propio derecho, *Arturo Negrón García* y *F. Ariel Avilés Rodríguez,* abogados del peticionario; *Ramón Teodoro Colón,* por su propio derecho.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Este caso demuestra la necesidad de que los abogados cumplan con lo consignado en el Canon 24 de los Cánones de Ética Profesional que establece que "[e]s deseable que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito" y que "[u]n abogado debe exigir el pago de honorarios contingentes sólo en aquellas ocasiones en que dichos honorarios sean beneficiosos para su cliente, o cuando el cliente lo prefiera así después de haber sido debidamente advertido de las consecuencias". Los términos generales utilizados en el acuerdo verbal y la controversia actual indican que no se consideraron adecuadamente las consecuencias previsibles al pactar los honorarios.

Todo abogado, al iniciar su gestión profesional, debe tener presente la advertencia del Canon 24 de los de Ética Profesional antes citado al efecto de que "es deseable que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito" y en aquellos casos en que no sea anticipable de un todo al inicio de la gestión profesional

la extensión y valor de éstos, deberá reducir a escrito el acuerdo sobre honorarios, libre de ambigüedades y con óptima claridad en sus términos, consignando las contingencias previsibles que pudieran surgir durante el transcurso del pleito. Es necesario que esto sea así ya que, según dispone el Canon 25 de los de Ética Profesional, "[l]as controversias con los clientes con respecto a la compensación deben evitarse por el abogado en todo lo que sea compatible con el respeto a sí mismo y con el derecho que tenga a recibir una compensación razonable por los servicios prestados. Solamente deben establecerse demandas contra los clientes para evitar injusticias, imposiciones o fraudes".

El peticionario, abogado de profesión, aceptó la representación del demandante. Acordaron verbalmente unos honorarios contingentes fijados en un 20%. En la demanda se solicitó del tribunal de instancia que dictara sentencia que concediera la suma de $700,000 en concepto de daños y perjuicios al demandante y ordenara que se reinstalaran las pólizas del demandante y se pagaran varias cantidades adeudadas bajo los términos de las mismas. A pesar de los múltiples remedios que procedía solicitar y la variada naturaleza de los mismos, el peticionario no precisó por escrito con su cliente la fórmula que utilizaría para determinar sus honorarios.

El tribunal de instancia determinó que el demandante se encontraba total y permanentemente incapacitado desde el 31 de octubre de 1974; que las pólizas de seguro de vida, L-1012182, y de seguro de incapacidad, 630635, continuaban en vigor entre las partes y, de acuerdo con sus términos, debía recibir los beneficios especificados en dichas pólizas. Además, condenó a la codemandada, All American Life and Casualty Co., al pago de $5,000.00 por los daños y perjuicios ocasionados al demandante, $1,500.00 por concepto de honorarios de abogado y los intereses legales a partir de la presentación de la demanda.

Luego de dictada la sentencia, el abogado-peticionario y

el cliente-recurrido no pudieron llegar a un acuerdo sobre los honorarios y, en consecuencia, recurrieron a los tribunales.

El Tribunal Superior, al adjudicar la controversia, dictó resolución en los siguientes términos:

Ante todo este cuadro, resolvemos y determinamos que el abogado deberá recibir las siguientes sumas:

1) $1,500 concedidos por concepto de honorarios de abogado.[1]

2) 20% de los $5,000, o sea, $1,000 concedidos por concepto de daños y perjuicios.

3) 20% de los $38,274.60, o sea $7,654.80, de los pagos mensuales por incapacidad recibidos hasta 28 de junio de 1979.

4) 20% de los intereses adeudados por la demandada a ser satisfechos a tenor de orden dictada hoy.

5) 20% de los pagos mensuales por incapacidad satisfechos por la demandada al demandante durante julio y agosto, o sea, 20% de $1,400 ó $280.00.

Acordamos revisar.

Es respecto a las pólizas de seguro que surge la complicación debido a la imposibilidad de valorar con precisión el beneficio recibido por el demandante. El peticionario valora la póliza de incapacidad física en $84,000.00, la cantidad máxima de beneficios que podría recibir el asegurado como resultado de una incapacidad total por enfermedad. La póliza dispone un beneficio de $700.00 mensuales durante un período máximo de 10 años en casos de incapacidad total por enfermedad. La póliza de seguro de vida la valora el peticionario en $50,000.00, el beneficio que establece la póliza en caso de morir el asegurado estando vigente la póliza.

Además, reclama el peticionario compensación en relación con las primas de las pólizas de cuyo pago el asegurado ha

---

[1] Los honorarios de abogado concedidos por una sentencia pertenecen a la parte y no al abogado. *A. Méndez & Hno.* v. *Chavier*, 39 D.P.R. 731 (1929); *Casals* v. *Rosario*, 34 D.P.R. 77 (1925) y la última oración del Canon 24 de los de Ética Profesional.

sido relevado, mientras persista su incapacidad, por las cláusulas de relevo de primas contenidas en las pólizas.

El recurrido expresa estar dispuesto a pagar el 20% de las cantidades recibidas y el 20% de los beneficios que pueda recibir en el futuro bajo las pólizas de seguro.

Ninguna de las posiciones es aceptable. El peticionario equipara la posibilidad de recibir los beneficios indicados con la certeza de recibirlos. Además, no descuenta cantidad alguna en consideración al tiempo que tiene que esperar el recurrido para recibir los beneficios, si es que los recibe.

■ El recurrido, en su interés por resolver la controversia, pretende hacer al peticionario beneficiario de facto de las pólizas en un 20%. Claramente ésta no fue la intención de las partes al contratar. De haber sido la intención de las partes, se habría violado el Canon 23 de los Cánones de Ética Profesional que en su parte pertinente dispone que "[e]l abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado". En el caso de autos, el asunto en litigio es precisamente las pólizas de seguro.

■ Cuando se pactan honorarios contingentes, el abogado es compensado si gana el caso y en proporción a la cuantía concedida en la sentencia. Presumiblemente hay una relación directa entre el valor de los servicios prestados por el abogado y la cuantía de la sentencia. El pacto de honorarios contingentes "[c]onstituye algo que siempre ha sido mirado con prevención, que debe evitarse, ya que son muchas las razones fundamentales que militan en su contra, pero el legislador moderno enfrentándose abiertamente con la situación, se ha dado cuenta de que existen casos en que la justicia sería difícil que fuera defendida a no ser en esa forma y ha preferido dejar que sean los hechos los que hablen por sí mismos en cada transacción". *Franqui* v. *Fuertes Hnos., S. en C.*, 44 D.P.R. 712, 725 (1933). El peticionario logró mediante sus esfuerzos que se consideraran vigentes los con-

tratos de seguro entre las partes. Ahora bien, una vez establecida la vigencia de los contratos, los beneficios recibidos por el asegurado dependen de contingencias ajenas a la labor del abogado tales como la salud posterior del asegurado. No es propio que los honorarios del abogado dependan de contingencias ajenas a su labor.

Resultando improcedente en un caso contractual como el de autos la estimación de los honorarios a base de *quota litis*, procede estimar una razonable compensación que retribuya adecuadamente la labor realizada por el letrado recurrente. *Para ello se deja sin efecto la resolución recurrida y se remite el caso al tribunal de instancia para que los letrados aporten prueba del tiempo dedicado a la tramitación del pleito y el valor razonable de las horas invertidas en su consecusión. Oída la prueba, el tribunal determinará el valor de los servicios prestados por el peticionario.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Negrón García se inhibió.